UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at ASHLAND**

| | |
|---|---|
| KRISTAL MARIE KISER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. |
| v. ) | 0:13-cv-68-JMH |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL ) | **AND ORDER** |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

\*\*\*

This matter is before the Court upon cross-motions for Summary Judgment [D.E. 10, 12] on Plaintiff's appeal of the Commissioner's denial of her application for child's insurance benefits and Supplemental Security Income. [Tr. 19-33].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

**I. Overview of the Process and the Instant Matter**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
>
> 2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.
>
> 3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.
>
> 4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.
>
> 5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the

relevant time period under step one. [Tr. 24]. Under step two, the ALJ found that Plaintiff's medically determinable impairments of depression, borderline intellectual functioning, and obesity were "severe" as defined by the agency's regulations. [Tr. 24-25]; 20 CFR §§ 404.1520(c), 416.920(c). The ALJ further found that Plaintiff's impairment of migraine headaches was a "non-severe" impairment. [Tr. 24-25].

During step three of the analysis, the ALJ considered all of Plaintiff's impairments and determined that none of them met the criteria listed in 20 CFR pt. 404, subpt. P, app. 1. [Tr. 25-27]. After further review of the entire record, the ALJ concluded at step four that Plaintiff had a residual functional capacity (RFC) to perform a full range of work at all exertional levels. [Tr. 27-32]. However, the ALJ found Plaintiff had the "following nonexertional limitations: she can perform simple to moderately complex tasks involving no more than three-step instructions, in routine work settings involving no more than limited interaction with the public and no interaction with children." [Tr. 27].

The ALJ found that Plaintiff had no past relevant work. [Tr. 32]. The ALJ further found that there were jobs in the national economy that Plaintiff could perform. [Tr. 32]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 33].

3

In this appeal, Plaintiff argues that the ALJ erred by summarily rejecting whether Plaintiff meets or equals listing 12.05(c), without analysis of the record, and that the ALJ erred in concluding that Plaintiff could perform work in the national economy because the vocational expert only responded to an inaccurate or incomplete RFC.

**II. Standard of Review**

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

**III. Factual and Procedural Background**

Plaintiff was twenty years of age at the time of the hearing [Tr. 44], and has a high school education. [Tr. 45]. Plaintiff has no past relevant work experience. [Tr. 46-47, 286]. Plaintiff filed for child's insurance benefits based on disability and for Supplemental Security Income (SSI), alleging disability beginning on January 12, 2010. [Tr. 22]. The claims were denied both initially and upon reconsideration. [Tr. 22]. Plaintiff requested a hearing with the ALJ, which took place on August 25, 2011. [Tr. 22]. The ALJ issued an unfavorable decision denying child's insurance benefits and SSI on September 6, 2011. [Tr. 33].

According to Plaintiff, she has migraine headaches that cause her to have to lie down for two to three hours at a time with the lights off [Tr. 49], and limits her ability to work. [Tr. 48]. Additionally, she claims the headaches cause her to lose her temper. [Tr. 48]. Plaintiff is also being treated for depression. [Tr. 49]. Plaintiff treats her headaches with over-the-counter medications, such as Tylenol or Motrin. [Tr. 48]. Plaintiff is prescribed Paroxetine for depression and Travobone to help her sleep. [Tr. 285, 49].

Plaintiff was placed in special education classes in 1998 [Tr. 562], but graduated high school with a regular diploma. [Tr. 305, 308]. Plaintiff was administered the Wechsler IQ Test

5

for Children on three occasions during her schooling. In 2004, Plaintiff received a Verbal IQ score of 69, a Performance IQ score of 86, and a Full Scale IQ score of 75. [Tr. 563]. In 2001, Plaintiff received a Verbal IQ score of 64, a Performance IQ score of 83, and a Full Scale IQ score of 65. [Tr. 564]. In 1998, Plaintiff received a Verbal IQ score of 66, Performance IQ score of 82, and a Full Scale IQ score of 72. [Tr. 564]. Additionally, she was noted to have underdeveloped reading skills [Tr. 565], a poor ability to reason when solving math problems [Tr. 565], and a difficulty with the written language. [Tr. 565]. During high school, Plaintiff performed work at Busy Bees, a daycare center [Tr. 47], and Goodwill. [Tr. 46].

After high school, Plaintiff attended the Carl D. Perkins Vocational Training Center. [Tr. 45]. Plaintiff took classes in materials management and job seeking skills. [Tr. 46]. Plaintiff graduated from the program and asserts that her grades were very good. [Tr. 45-46]. While at Carl D. Perkins, Plaintiff worked in the gift shop. [Tr. 47].

Plaintiff visited Family Medicine Morehead with complaints of depression [Tr. 384, 387] and migraine headaches [Tr. 405], as well as various other health problems Plaintiff does not allege result in disability. Due to her complaints of depression, Plaintiff was referred to Pathways, Inc. [Tr. 443] where she was diagnosed with mood disorder. [Tr. 446].

6

In February 2011, Dr. Corazon Chua performed a psychiatric evaluation of Plaintiff. [Tr. 551-560]. Dr. Chua diagnosed Plaintiff with depressive disorder, anxiety disorder, and posttraumatic stress disorder. [Tr. 552]. Dr. Chua prescribed Paxil and Trazodone. [Tr. 554].

On July 26, 2010, Dr. Christopher Catt performed a consultative examination of Plaintiff. Dr. Catt noted that Plaintiff was neat and clean, and her grooming was normal. [Tr. 452]. Her attention was average, she evidenced normal eye contact, and she presented with an odd affect and adequate mood. [Tr. 452]. Dr. Catt administered the Wechsler Adult Intelligence Scale-IV IQ test and Plaintiff had a score of 76 in Verbal Comprehension, 109 in Perceptual Reasoning, 71 in Working Memory, 71 in Processing Speed, and a Full Scale IQ of 80. [Tr. 453]. Dr. Catt diagnosed Plaintiff with borderline intellectual functioning. [Tr. 454]. Furthermore, Dr. Catt found that her capacity to understand, remember, and carry out instructions toward performance of simple repetitive tasks was not affected, her ability to tolerate stress and pressure of day-to-day employment was not affected, her ability to sustain attention and concentration towards simple tasks was not affected, and her ability to respond to supervision, co-workers, and work pressures was not affected. [Tr. 454-455].

7

Psychologist Ann Demaree performed a residual functional capacity assessment of Plaintiff and found that she was able to understand and complete simple to more complex tasks and could adapt to a normal work setting sine her depression was improved with medication. [Tr. 459].

Vocational expert Gina Baldwin testified at the hearing before the ALJ. [Tr. 62-66]. Ms. Baldwin testified that a person with an RFC equivalent to the ALJ's RFC finding for Plaintiff would be able to perform jobs in the regional and national economy. [Tr. 64-65]. When the hypothetical person was augmented to include the additional limitation that the person would be off task at least 20 percent of the time, Ms. Baldwin testified that there were no jobs in the regional or national economy that the hypothetical person could perform. [Tr. 65].

Plaintiff is still able to keep up with daily household activities [Tr. 55, 266], is able to visit with friends [Tr. 56], cook meals [Tr. 55, 56], care for her family [Tr. 235], shop for groceries with her mother [Tr. 272], and she likes to read, write, and draw. [Tr. 56, 67-68].

**IV. Analysis**

    **A. The ALJ did not err by summarily rejecting that Plaintiff meets or equals listing 12.05(c).**

Plaintiff contends that the ALJ did not analyze the entire record when determining whether she meets or equals listing

8

12.05(c). Plaintiff contends that she had three separate valid IQ tests with "verbal and/or full scale scores between 60 and 70 as required by Listing 12.05(c)," which the ALJ simply ignored. [D.E. 10-1 at 8]. Thus, Plaintiff argues, the case must be remanded.

To meet the definition of "intellectual disability" as defined in Paragraph C of Listing 12.05 a person must have "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 CFR pt. 404, subpt. P, app. 1 § 12.05(C). "The Sixth Circuit has repeatedly clarified that a finding of presumptive disability under Listing 12.05C requires the claimant to satisfy the specific factors of paragraph C as well as the diagnostic description in the introductory paragraph." *Alcorn v. Astrue*, No. 5:07-cv-212-DCR, 2008 WL 1790192, at *4 (E.D. Ky. Apr. 18, 2008) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)). Therefore, Plaintiff must show that she meets paragraph C, as well as showing that she has a "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 CFR pt. 404, subpt. P, app. 1 § 12.05.

The three tests Plaintiff claims the ALJ ignored were administered in the years 1998, 2001, and 2004. [Tr. 563-64].

9

Thus, Plaintiff would have been 7, 10, and 13 when these tests were administered. *See* [Tr. 44]. The regulations governing Social Security disability determinations provide that IQ tests given at this young age are only valid for a limited time. "Generally, the results of IQ tests tend to stabilize by the age of 16. . . . IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above." 20 CFR pt. 404, subpt. P, app. 1 § 112.00(D)(10). Plaintiff did not have a Verbal IQ, Performance IQ, or Full Scale IQ score below 40 in any of the three tests administered. [Tr. 563-64]. Thus, Plaintiff's last IQ test score between 60 and 70 would have been valid until 2006. The Plaintiff did not appear before the ALJ until August 25, 2011. [Tr. 22]. Therefore, these IQ tests were not valid tests on which the ALJ could rely.

The ALJ did have a more recent test to rely upon, which was administered after Plaintiff turned 16. This test was administered in 2010 by Dr. Christopher Catt as part of a consultative examination. [Tr. 450]. Plaintiff's lowest score in any category was 71, with a full scale IQ of 80. [Tr. 453]. As this was the only IQ test administered that was still valid at the time of the ALJ's decision, the ALJ's determination that Plaintiff did not meet Paragraph C of Listing 12.05 is supported by substantial evidence. Plaintiff did not have a valid IQ test

10

score within the 60 to 70 range, and, thus, could not meet the paragraph C criteria.

> **B. The ALJ did not err as a matter of law in concluding that Plaintiff could perform work in the national economy.**

When asking a hypothetical question, the ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (citations omitted). The limitations the ALJ finds credible must be supported by substantial evidence. *See Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 453 (6th Cir. 2007) ("There is substantial evidence in the record that the two hypothetical questions posed by the ALJ accurately portrayed [plaintiff's] credible limitations."). Plaintiff contends that the ALJ erred by failing to include that Plaintiff needed a one-on-one job coach, that she works at an abnormally slow pace unless closely supervised, she has reading and math limitations, and that she has a limited ability to handle stress from production. [D.E. 10-1 at 10].

While Plaintiff points to evidence in the record tending to show these limitations may be accurate, there is also substantial evidence in the record to support the ALJ's finding that these are not credible limitations. The ALJ specifically

11

cited to Dr. Christopher Catt's opinion that Plaintiff's

> capacity to understand, remember, and carry out instructions toward performance of simple repetitive tasks is not affected; her ability to tolerate stress of day-to-day employment is not affected; her ability to sustain attention and concentration towards performance of simple repetitive tasks is not affected; and her capacity to respond appropriately to supervision, co-workers, and work pressures is not affected.

[Tr. 31]. Furthermore, the ALJ, finding that they were balanced, objective, and consistent with the evidence of record as a whole, relied upon the opinions of the experts who prepared the State Agency reports. [Tr. 33]. In these reports, Plaintiff was found not to be significantly limited in understanding and memory [Tr. 82, 457] and Plaintiff's only moderate limitation in concentration or persistence was the ability to perform activities within a schedule, maintain regular attendance and be punctual. [Tr. 83, 457]. Thus, evidence exists that a reasonable mind might accept as establishing that the ALJ included all credible limitations in the hypothetical questions posed to the vocational expert. *See Cutlip*, 25 F.3d at 286 (citations omitted).

**V. Conclusion**

Accordingly, based on the foregoing, **IT IS ORDERED:**

(1) that Plaintiff's Motion for Summary Judgment [D.E. 10] be, and the same hereby is, **DENIED;**

(2) that Defendant's Motion for Summary Judgment [D.E. 12] be, and the same hereby is, **GRANTED**.

This the 18th day of November, 2013.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

13